3:24-mj-00061

| | | |
|---|---|---|
| STATE OF OREGON | ) | |
| | ) ss: | AFFIDAVIT OF CLINTON LINDSLY |
| County of Multnomah | ) | |

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Clinton Lindsly, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I have been employed as a Special Agent (SA) by the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) since August 2010. I am currently assigned to the child exploitation unit in the HSI office in Portland, Oregon. Previously, I was assigned to the HSI office in Los Angeles, California, where I worked for over six years in a money laundering and narcotics group that specialized in undercover operations. In 2018, I transferred to HSI Portland and continued to specialize in money laundering and narcotics investigations until January 2020. My formal law enforcement training includes successfully completing the 23-week HSI basic training course at the Federal Law Enforcement Training Center in Glynco, Georgia. During that training, I learned how to conduct child exploitation investigations. Since then, I have been involved in many child exploitation investigations and have assisted federal and state partners during their investigations. As such, I have become familiar with ways that child pornography is shared, distributed, and/or produced, including the use of various social media websites (Facebook, Twitter, Kik, Snap Chat, Discord, etc.), "cloud" based storage, and peer-to-peer (P2P) networks. Often, individuals involved in child exploitation will collect or store images and/or videos on various media devices they keep at their residences, or in offsite locations such as "cloud" based storage. I have also become familiar with jargon or slang terms that people involved in child exploitation will use to discuss their activities.

2. I have worked with agents involved in numerous investigations involving the sexual exploitation of children or the distribution, receipt, and possession of child pornography. I have participated in searches of premises and assisted in gathering evidence pursuant to search warrants, including search warrants in multiple child pornography investigations. I have participated in interviews of persons who possess and distribute child pornography.

3. I have participated in online undercover communications using messaging platforms with hundreds of people interested in the production, distribution, and receipt of child pornography. In my undercover role I have assisted in the administration of private chat groups dedicated to the production, distribution, and receipt of child pornography. As such, I have become familiar with platforms used to facilitate the production, distribution, and receipt of child pornography and their purposes.

4. I submit this affidavit in support of a criminal complaint and arrest warrant for **David Lee CANNON**, for violations of *18 U.S.C. § 2252A(a)(2)* – Receipt of Child Pornography, and *18 U.S.C. § 2252A(a)(5)(B)* – Possession of or Accessing with Intent to View Child Pornography, collectively referred to as the "**Target Offenses**." As set forth below, I have probable cause to believe that **CANNON** committed the **Target Offenses** between at least March 2 and March 30, 2024.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, communications with others who have

**Page 2 – Affidavit of Clinton Lindsly**

knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

6. *Title 18, United States Code, Section 2252A(a)(2)* makes it a crime to knowingly receive or distribute any child pornography using any means or facility of interstate or foreign commerce, or that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

7. *Title 18, United States Code, § 2252A(a)(5)(B)* makes it a crime to knowingly possess or access with intent to view child pornography that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

8. The term "child pornography" is defined in 18 U.S.C. § 2256(8), and includes any visual depiction of a child under the age of 18 years engaging in sexually explicit conduct. "Sexually explicit conduct" is defined in 18 U.S.C. § 2256(2) and includes sexual intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal, whether between members of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; and the lascivious exhibition of the genitals, anus, or pubic area of any person.

## Information Regarding Telegram

9. Telegram is an internet-based messaging and social-media application for smartphones, tablets, and computers. According to its public statements, it has more than 200 million active users. Telegram is free and signing up requires only a supported device and a telephone number. Users typically choose a username to communicate with one another, but

**Page 3 – Affidavit of Clinton Lindsly**

usernames are not required. Through the application, users can transmit messages, photos, videos, and other types of files with one another.

10. Telegram users can also create and participate in "groups," which allow up to 200,000 users to exchange messages and files, including photos and videos. Telegram groups can be either private or public and can also be made subject to the supervision of administrators, who have the ability to control membership in the group, including by adding members to the group. A group administrator, and in some cases group members, can add new members to a group without any action on the part of those new members. Nevertheless, anyone in a group can formally leave the group, close the window showing the group chat (including shared links and files), or simply decline to participate in any group chat or activity. Telegram users can also participate in private messages from one user to another user. The use of private messages is similar to "Groups."

11. In general, Telegram groups display posted messages and shared files in chronological order, and they indicate the username of the user who posted the message or shared the file. Once in a Telegram group, a user can see other group members posting messages and sharing files in real time. A user can also scroll up and view historical messages and shared files, and in most cases, the user can view activity that took place before the user became part of the group.

12. As noted above, group members can post text messages within the group chat, including messages that consist exclusively of URL links to websites or files outside of Telegram. They can also post images and video files, and other group members can then download those images and video files to their own hard drives or other digital media. Group members can also delete messages they have posted or files they have shared in the past, and

**Page 4 – Affidavit of Clinton Lindsly**

once this is done, those messages and files are no longer viewable within the group. Group administrators can have the ability to delete messages as well. Private messages between two users function essentially the same as groups in this regard.

13. Telegram places a premium on privacy and security. The companies that control it are not based in the United States and, in HSI's experience, Telegram does not respond to process issued by U.S. law enforcement. According to the "Frequently Asked Questions" section of its website, Telegram does not process any requests related to illegal content within private group chats or elsewhere. In addition, the "Frequently Asked Questions" page also states that Telegram deliberately maintains data across multiple nations so as to make it impossible for a single government to compel access to user data. Specifically, to protect user data that is not covered by end-to-end encryption, Telegram uses a distributed infrastructure. It stores cloud chat data in multiple data centers around the globe that are controlled by different legal entities spread across different jurisdictions. The relevant decryption keys are split into parts and are never kept in the same place as the data they protect. Telegram states that, as a result, several court orders from different jurisdictions are required to force it to give up any data. Telegram purports that it has disclosed 0 bytes of user data to governments. Although it generally does not cooperate with law enforcement, Telegram provides an "abuse" email address and, in the experience of HSI, it will sometimes terminate groups dedicated to child pornography once those groups are reported to Telegram.

14. Based on the above functions and security features, Telegram has become a common platform for the distribution, receipt, and discussion of child pornography.

**Page 5 – Affidavit of Clinton Lindsly**

## Statement of Probable Cause

*CANNON's Criminal History*

15. In March 2024, I was contacted by the United States Attorney's Office (USAO) regarding an investigation involving **David CANNON**, a registered sex offender. **CANNON** has several convictions for sex offenses, including predatory crimes, stretching back to when he was 18 years old. **CANNON** is required to register as a sex offender for life.

16. Specifically, in October 2007, **CANNON** was identified to be peering into the window of a nine-year-old child and was punched in the face through the window screen by the victim's mother. **CANNON** claimed that he was simply out for a walk. **CANNON** was convicted for a misdemeanor of criminal trespass.

17. In November 2007, the Newport, Oregon, Police Department responded to a fight involving **CANNON**, **CANNON's** girlfriend, and his sister. During the investigation, it was learned that **CANNON** was aggressively soliciting his 16-year-old sister to have sex with him for $150. In order to memorialize this request, **CANNON** wrote a letter to his sister. The investigation also revealed that **CANNON** had drilled a hole through his sister's bathroom wall to watch her while she showered and used the restroom. The sister also stated that **CANNON** would routinely move her curtains so that he could stand outside and watch her in her bedroom. As a result of these allegations, **CANNON** was kicked out of the house and subsequently moved to Idaho.

18. In June 2008, police were dispatched to an inn in Newport based on reports that **CANNON** was holding his then 19-year-old girlfriend against her will inside a hotel room. The girlfriend reported that she and **CANNON** had gotten into an argument and **CANNON** became enraged. **CANNON** then took out a knife and began to stab his "thought book." The girlfriend

**Page 6 – Affidavit of Clinton Lindsly**

attempted to leave but was stopped by **CANNON** who sat in a chair blocking the front door. **CANNON** was charged with kidnapping in the first degree, kidnapping in the second degree, and menacing in Lincoln County. However, the charges were eventually dismissed due to the girlfriend being unwilling to cooperate. Despite her unwillingness to cooperate, the girlfriend applied for and was granted a restraining order against **CANNON** in October 2008. Then in December 2008, **CANNON** was found in contempt of court for violating the restraining order and contacting the girlfriend. **CANNON** was ordered to complete mental health treatment and was eventually diagnosed with Anti-Social Personality Disorder.

19. In January 2009, **CANNON** again violated the above restraining order involving his girlfriend. While searching him, police officers located a piece of paper with two sexually explicit photos of female children who were approximately 10 years old. **CANNON** was subsequently convicted for a misdemeanor of encouraging child sex abuse in the third degree and a felony conviction for encouraging child sex abuse in the second degree. **CANNON** was sentenced to year in prison and a 24-month supervision period.

20. In April 2009, an investigation was initiated that involved allegations of **CANNON** sexually assaulting a four-year-old child. The sexual assault occurred between approximately July to October 2008. In summary, **CANNON** was homeless at the time and was allowed to stay in the home of a co-worker. While in the home, **CANNON** sexually abused the co-worker's four-year-old child. **CANNON** admitted to the sexual abuse and stated that he also enjoyed child pornography, bestiality porn, and porn showing people passed out. **CANNON** also wrote a letter to the father of the four-year-old child apologizing for sexually abusing her and stated that he was trying to get help. As part of the investigation, **CANNON** also took a polygraph. During the polygraph, **CANNON** admitted to peeking in his neighbor's window

while she was dressing, having a problem with wanting to have sex with someone too young, looking up stories about adult males having sex with little girls, and sexually assaulting females while passed out. **CANNON** was subsequently convicted of sexual abuse in the first degree and was sentenced to 75 months in prison.

21.   In January 2016, CANNON was released from prison, put on post-prison supervision, and subsequently moved to Idaho. While in Idaho, **CANNON** entered sex offender treatment. However, **CANNON** was kicked out of sex offender treatment in August 2016 for exposing himself to a store clerk and was arrested. **CANNON** was convicted of a state misdemeanor of indecent exposure and was sentenced to 180 days of prison and reentered sex offender treatment.

22.   In December 2016, **CANNON** was again kicked out of sex offender treatment after having unapproved sexual contact, viewing pornography on a phone, unexcused absences, displaying "dishonesty," and overall lack of compliance with supervision. When asked about the pornography he had been viewing, **CANNON** stated that the girls were "probably eighteen." **CANNON** was sanctioned multiple times and was eventually returned to Oregon where he was sanctioned again for having an unapproved laptop and cell phone. A community member also reported that **CANNON** was at the Toledo, Oregon, Summer Festival and was looking at her three small children in a way that made her uncomfortable. **CANNON** was prohibited from being around children. **CANNON** failed to report to his supervising officer in July 2017 and was sanctioned with 45 days in jail.

23.   In July 2017, the Newport Police Department responded to a complaint that there was a suspicious individual dressed as a Walmart employee and taking photographs of children in the toy department on a cell phone. **CANNON** was identified to have come into the store on

**Page  8 – Affidavit of Clinton Lindsly**

multiple days and spent hours in the toy department. However, **CANNON** was not charged in this case as no law violations were identified.

24. In February 2018, **CANNON** was indicted on multiple counts of felony encouraging child sex abuse in the first degree in Lincoln County. In summary, **CANNON** had purchased a laptop from a pawn shop and subsequently returned the laptop to the pawn shop. During a review of the laptop, the pawnshop owners located inappropriate pictures of children and reported it to police. Then police then obtained a search warrant for **CANNON's** various digital devices and located additional child pornography. **CANNON** was arrested, charged, and was sentenced to life in prison. This most recent conviction was recently vacated by the Oregon Court of Appeals. As a result, **CANNON** was subsequently released from custody in December 2023 and then moved to 2901 SE 119th Ave Room #4, Portland, OR 97266 (**CANNON's** residence) in February 2024.

*CANNON Identified as Receiving Child Pornography Via Telegram in March 2024*

25. In February 2024, the Hillsborough County, Florida, Sheriff's Office (HCSO) was assigned to investigate CyberTipline Report #186145731. In summary, Instagram reported that a user had uploaded an image of child pornography to their platform. The video that was uploaded depicted a child under the age of five years old having her anus penetrated by an adult male's erect penis. The investigation eventually identified the Instagram user as Larry WILLARD, who is **CANNON's** uncle. WILLARD is also a registered sex offender.

26. HCSO interviewed WILLARD at his residence in Tampa, Florida. WILLARD signed a consent to search form and allowed investigators to review a digital tablet. During the review of the tablet, investigators located child pornography that was sent and received via the Telegram application. During the interview, WILLARD admitted to possessing and distributing

**Page 9 – Affidavit of Clinton Lindsly**

child pornography via Telegram and was arrested. Investigators subsequently applied for and were granted a state search warrant to forensically examine the tablet. The download of the tablet and other case related materials have been shared with me, and I have reviewed them.

27. During a review of the Telegram application, investigators observed that WILLARD was communicating with the Telegram user **@Dave3659** (**CANNON's** Telegram account). The Telegram user **@Dave3659** had an outward facing telephone number of 458-277-8532 (**CANNON's Cell Phone**) linked to the Telegram account, and the profile picture was of a white male with glasses. When asked who **@Dave3659** was, WILLARD stated that it was his nephew in Oregon who had recently also got out of prison. During a review of the chat communications, investigators observed that WILLARD had sent several videos of child pornography to **@Dave3659** on March 24, 2024. WILLARD also added that he frequently deleted message communications in order to free up space. I have provided a picture of the account information for Telegram account **@Dave3659** for the Court:



28.  HCSO investigators then subsequently identified **@Dave3659** as **CANNON**, who is a registered sex offender, as discussed above.  HCSO then reached out to the Portland Police Bureau and Newport Police Department seeking information on **CANNON**.  The investigation was then assigned to me.

29.  During my review of the HCSO evidence, I identified the Telegram chat communication between **WILLARD** and **CANNON** (**@Dave3659**) that was retrieved from **WILLARD**'s tablet.  The chat communication was short and only spanned approximately two days, on March 24 and 25, 2024.  However, the messages seemed to indicate that there were previous conversations that were no longer visible.  The chat communications were as follows:

    a.  **CANNON**: That almost looks like Rachael at that age

**Page 11 – Affidavit of Clinton Lindsly**

  i. Based on the above message, I believe that **CANNON** is referencing his sister "Rachel" and that WILLARD had likely sent him additional images of child pornography that were no longer visible that reminded him of his sister.

b. **CANNON**: You said dude helped you rebuild your collection what else you have

  i. Based on the above message, I believe that the "collection" **CANNON** is referencing a collection of images and videos of child pornography, and that he was asking WILLARD to send him child pornography.

c. WILLARD: Sent a video that depicted a naked prepubescent female child lying on her back. An adult male then inserts his finger into the child's anus. The child had no visible breast development and appeared to be approximately 6 – 9 years of age.

d. WILLARD: Sent a video that depicted a prepubescent female child performing oral sex on an adult male. The child appeared to be approximately 7 – 10 years of age.

e. WILLARD: Sent a video that depicted a prepubescent female child performing oral sex on an adult male. The child had no visible breast development and appeared to be 6 – 8 years of age.

f. WILLARD: Sent a video that depicted a prepubescent female child lying naked on a bed with her legs brought towards her head. An adult male is rubbing his penis on the child's vagina.

    g.  WILLARD: Sent a video that depicted a prepubescent female child performing oral sex on an adult male. The child appeared to be approximately 6 – 9 years of age.

    h.  WILLARD: Sent a video that depicted a prepubescent female child naked from the waist down. The child's legs are spread and the child is masturbating. The child appeared to be approximately 8 – 11 years of age.

    i.  WILLARD: My I pad is fucking up, so turning off tell later

    j.  **CANNON**: Okay

        i.  Based on the above message, I believe that **CANNON** received the videos of child pornography sent by WILLARD.

30.    I do not know if **CANNON** is aware of WILLARD's arrest. However, after WILLARD's, arrest **CANNON's** mother contacted the Newport Police Department and filed a police report. This report was assigned case number 24N-04305. According to **CANNON's** mother, she believed that **CANNON** "set up" WILLARD by sending him child pornography and then phoning in an anonymous tip to HCSO. Additionally, the mother claimed that she "blocked" **CANNON** because **CANNON** expressed to WILLARD that he (**CANNON**) had a rape fantasy involving his mother. However, despite this theory, the evidence of this case described above clearly indicates that 1) the HCSO investigation was initiated from a CyberTipline Report; 2) that WILLARD actually sent child pornography to **CANNON**; and 3) WILLARD was found in possession of hundreds of videos of child pornography on his tablet. Based on the investigation, I do not believe the claim that **CANNON** set up WILLARD. Additionally, as further described below, I found a text message on CANNON's cell phone dated

**Page 13 – Affidavit of Clinton Lindsly**

April 4, 2024, that **CANNON** sent that read "That's crazy my uncle is in jail." As such, I believe that **CANNON** knew **WILLARD** was arrested.

*Review of CANNON's Sex Registration Information*

31.     As discussed above, **CANNON** is required to complete annual sex registration paperwork. As such, **CANNON** reported to Portland Police Bureau on February 8, 2024, and completed his annual sex registration form. During my review of this form, I observed that **CANNON** reported his residence as **CANNON's** residence (but did not include room number) and that he listed his cell phone number as 458-277-8532 (**CANNON's Cell Phone**). **CANNON's Cell Phone** was the same phone number attributed to the Telegram user **@Dave3659** that received child pornography from **WILLARD** on March 24, 2024. I also reviewed **CANNON's** Oregon Driver License photograph. During my review, I observed that the profile picture of Telegram user **@Dave3659** appeared to be a selfie-style picture of **CANNON**. I have included **CANNON's** most recent sex registrant photograph and the profile picture of Telegram user **@Dave3659** side by side for the Court:



**Page 14 – Affidavit of Clinton Lindsly**

32.  According to subpoenaed records from T-Mobile, **CANNON's** cell phone (458-277-8532) is subscribed to "David Lee Cannon" at **CANNON's** residence (no room number) and has been since January 11, 2024.

*CANNON's Residence Managed by "Free on the Outside"*

33.  Being familiar with certain properties in the Portland metro area that are commonly used to offer transitional housing to sex offenders who have been released from custody, I contacted "*Free on the Outside*" to inquire if **CANNON's** residence was in fact a property that they managed.[1]  I called and spoke with the office manager as well as the Director. During my conversation, I learned that **CANNON** resides at **CANNON's** residence and that the residence is a shared housing facility with multiple occupants.  I learned that **CANNON** resides in a bedroom identified as "Room 4."  Additionally, an exact description of CANNON's bedroom was provided to investigators.

*Search Warrant Obtained and Executed*

34.  Based on the above investigation, the Honorable Youlee Yim You, United States Magistrate Judge, signed a search warrant authorizing the searches of **CANNON's** person and his residence located at 2901 SE 119th Ave, Portland, OR 97266 (**CANNON's** residence).  This warrant was assigned case number 3:24-mc-00365.  Additionally, Judge You also signed a search warrant authorizing investigators to obtain real-time GPS location data of **CANNON'S** cell phone (458-277-8532).  This warrant was assigned case number 3:24-mc-00364.

35.  On April 5, 2024, at approximately 8:45 a.m., using real-time location data from **CANNON's** cell phone, investigators located **CANNON** at Honest-1 Auto care located in

---

[1] https://www.freeontheoutside.org/

Page  15  – Affidavit of Clinton Lindsly

Milwaukie, Oregon.  **CANNON** was detained pursuant to the above search warrant.  I explained that a search warrant was issued related to his online Telegram activity with his uncle and explained the general nature of the chat communications.  I provided a copy of the search warrant to **CANNON** to review.  **CANNON** had a Samsung cell phone in his jacket pocket with corresponding phone number 458-277-8532 (i.e., the phone number linked to the Telegram account **@Dave3659**).

      36.    After being advised of his *Miranda* rights, **CANNON** claimed that he was not aware that his uncle (**WILLARD**) had been arrested and said he spoke to his uncle approximately two to three weeks ago.  When asked about other devices at his residence, **CANNON** stated that he had a tablet that he used for work and a dark blue Motorola cell phone by his television.  **CANNON** also confirmed that the Telegram account **@Dave3659** belonged to him.[2]  **CANNON** claimed that he was just trying to find people to talk to and hang out with locally on Telegram.  When asked what type of videos **WILLARD** had sent him, **CANNON** stated that he sent "basic videos."  When pressed further about what "basic videos" meant, **CANNON** asked for an attorney prior to any questioning.

      37.    Pursuant to the warrant, I then used **CANNON's** biometrics to unlock his Samsung cell phone that was found on his person.  In doing so, **CANNON** was prompted to enter a swipe code.  Without being asked to do so, I observed **CANNON** enter the swipe code to unlock his phone which I was able to write down.  During a manual review of the Samsung cell

---

[2] I asked **CANNON** if the Telegram account "@Dave3569" belonged to him, which he confirmed.  I inadvertently mixed up the numbers which should have been "@Dave3659." Nonetheless, I believe that **CANNON** confirmed that the Telegram account that **WILLARD** sent child pornography belonged to him. This was further confirmed by the fact the Telegram account displayed **CANNON's** picture, was linked to his sex registrant phone number, and the fact that **WILLARD** said the account belonged to his nephew "Dave" in Oregon.

**Page  16  − Affidavit of Clinton Lindsly**

phone, I did not locate the Telegram application installed. However, I did locate a self-style picture of **CANNON** that I recognized as the exact picture used for the Telegram profile **@Dave3659**. The picture appeared to have been taken on March 24, 2024 (i.e., the date that WILLARD sent child pornography to **CANNON** via Telegram). I also located several dozen pictures of prepubescent children, approximately 4 – 8 years of age, dressed in bathing suits and/or apparent gymnastics clothing. None of the images met the federal definition of child pornography. These images appeared to be screen shots off open-source websites. During a later review of the phone, I also located a text message indicating that **CANNON** knew his uncle (WILLARD) was arrested. The message read "That's crazy my uncle is in jail." This message was sent on April 4, 2024. Based on this text message, I believe that **CANNON** knew WILLARD was arrested and likely deleted the Telegram application from his device. I transported **CANNON** back to his residence in case his biometrics were needed to unlock additional devices.

38. At approximately 9:00 a.m., and while I was interviewing **CANNON**, other investigators executed the search warrant at **CANNON's** residence. During a search of his bedroom space, investigators located three additional cell phones, including a dark blue Motorola cell phone as previously described by **CANNON**, and a tablet device.

39. Once I arrived at **CANNON's** residence, I was informed that the additional devices were locked with biometrics. I brought the dark blue Motorola cell phone to **CANNON** and advised him to unlock the device using biometrics. **CANNON** appeared to touch the back of the device with his finger but was prompted to enter a passcode. Without being asked to do so, I observed **CANNON** unlock the device using the passcode "4141." I then disabled the security settings.

**Page 17 – Affidavit of Clinton Lindsly**

40. Based on the above information, I made a probable cause arrest of **CANNON** for violations of *18 U.S.C. § 2252A(a)(2)* – Receipt of Child Pornography, and transported him to jail pending his initial appearance. All the devices were subsequently transported to the HSI field office for additional forensic processing.

41. Once at the HSI field office, the dark blue Motorola cell phone was forensically extracted and provided to me for review.

42. During a preliminary review of media files on that phone, I located approximately 18 pictures that met the federal definition of child pornography.[3] All the files appeared to be stored in the cache (i.e., temporary storage) and appeared to have been viewed using an unknown Android application. Additionally, all the files had a "Last Write Time" between March 2 and March 30, 2024. Based on this information, I believe that **CANNON** viewed the images of child pornography on the dark blue Motorola cell phone using an unknown application between at least March 2 and March 30, 2024. Several examples follow:

*File Name: 370377959c486546845bd87922b61acc391936797ffc7d0f9f956af92b6ade4d*

   a. File Path: EXTRACTION_FFS.zip\data\data\com.google.android.apps.photos\cache\glide_cache
   b. MD5: CA603AC61A68FABCB494395B6AA4E42D
   c. Last Write Time: 3/2/2024 5:49:57 PM
   d. Description: A picture that depicted a prepubescent female child, approximately 3 – 5 years of age, being anally penetrated by an adult male's erect penis.

*File Name: 717ce615931ec092db7d5320513a76f2ba39af24735825366e67ec8012a0fde8*

---

3 There are approximately 15,000 additional media files that I still need to review.

**Page 18 – Affidavit of Clinton Lindsly**

    a. File Path: EXTRACTION_FFS.zip\data\data\com.google.android.apps.photos\cache\glide_cache

    b. MD5: 4CE4D6AF4434577113A99E10B0B4BDB5

    c. Last Write Time: 3/30/2024 8:53:27 PM

    d. Description: a picture that depicted a prepubescent female child, approximately 4 – 7 years of age, performing oral sex on an adult male.

*File Name: 6f39e951499fed1f1a4290cb6e4a444c5fc770a89d813346a586bb3adbb08b15*

    a. File Path: EXTRACTION_FFS.zip\data\data\com.google.android.apps.photos\cache\glide_cache

    b. MD5: 80C37B2D301738C2E01E70F4FF638EDE

    c. Last Write Time: 3/30/2024 7:22:18 PM

    d. Description: A picture that depicted a prepubescent female child, approximately 6 – 8 years of age, lying naked on a bed.  An adult male is holding the child's legs towards her head and having vaginal sex with the child.

43. Based on the above facts, I believe that **CANNON** has committed the **Target Offenses**.

## Conclusion

44. Based on the foregoing, I have probable cause to believe that **David Lee CANNON** committed violations of *18 U.S.C. § 2252A(a)(2)* – Receipt of Child Pornography, and *18 U.S.C. § 2252A(a)(5)(B)* – Possession of or Accessing with Intent to View Child Pornography (**Target Offenses**).  I therefore respectfully request that the Court issue a criminal complaint and arrest warrant charging **CANNON** with those offenses.

45. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney Mira Chernick.  AUSA Chernick advised me that in her opinion, the affidavit and

**Page 19 – Affidavit of Clinton Lindsly**

application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

           *(By telephone)*
CLINTON LINDSLY
Special Agent
Homeland Security Investigations

Sworn to before me telephonically or by other reliable means pursuant to Fed. R. Crim. P. 4.1 at __1:51 pm__ am/pm on April __6__, 2024.

*Youlee Yim You*
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Page 20 – Affidavit of Clinton Lindsly**